IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAIEMURZHON IMAMOV | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-2204 |
| | : | |
| JL JAMISON | : | |
| *WARDEN, FDC PHILADELPHIA, In his* | : | |
| *official capacity*, et al. | | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                 **April 29, 2026**

Petitioner Maiemurzhon Imamov has filed a petition for writ of habeas corpus pursuant to

28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS).

Imamov argues his mandatory detention without a bond hearing under 8 U.S.C. § 1225(b) is illegal.

The Court agrees Imamov is no longer subject to mandatory detention under § 1225(b)(1)(B)(ii),

the provision the Government invokes to justify the detention.  Rather, Imamov may be detained

only under 8 U.S.C. § 1226(a) with the opportunity for a bond hearing.  The Court will therefore

grant the petition.

**BACKGROUND**

On December 30, 2022, Petitioner Maiemurzhon Imamov, a 21-year-old Russian citizen,

entered the United States near Jacumba, California, and immediately turned himself in to U.S.

Border Patrol agents.[1]  Pet. ¶ 13, ECF No. 1.  On January 2, 2023, Border Patrol agents at the San

Diego processing station took a sworn statement from Imamov, who stated he left Russia to escape

the war as he was about to be drafted, expressed a fear of returning to Russia, and stated he would

be harmed if he returned.  *Id.* ¶ 14; Pet'r's Ex. C, ECF No. 1-3.  The same day, DHS placed Imamov

---

[1] The record reflects that Imamov encountered Border Patrol agents approximately 1.2 miles east
of the Tecate, California port of entry and approximately 100 yards north of the United
States/Mexico International Boundary.  Resp'ts' Ex. B at 2, ECF No. 5-2.

in expedited removal proceedings under 8 U.S.C. § 1225(b)(1) as an immigrant not in possession of a valid entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2] Pet. ¶ 15; Pet'r's Ex. B, ECF No. 1-3; Resp'ts' Ex. A, ECF No. 5-1.

Because Imamov expressed fear of returning to his home country, he was referred for an interview with an asylum officer, which was conducted telephonically on January 17, 2023.[3] Pet. ¶ 17. Based on the interview, the asylum officer found Imamov had a credible fear of persecution. *Id.*; Pet'r's Ex. E, ECF No. 1-3. A supervisory asylum officer approved the decision. Pet. ¶ 18; Pet'r's Ex. E. Imamov was thereafter placed in standard removal proceedings under 8 U.S.C. § 1229a.[4] Pet. ¶ 19. On January 27, 2023, Immigration and Customs Enforcement (ICE) issued an "Interim Notice Authorizing Parole," notifying Imamov he was being paroled from ICE custody under 8 U.S.C. § 1182(d)(5)(A). *Id.*; Pet'r's Ex. A, ECF No. 1-3. The Notice stated Imamov's parole authorization was "valid for one year beginning from the date on this notice" and would "automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion." Pet'r's Ex. A.

---

[2] The record includes a partially completed Form I-860, Notice and Order of Expedited Removal, dated January 2, 2023. Resp'ts' Ex. A. The top half of the form, captioned "Determination of Inadmissibility," was completed by the Border Patrol agent who took Imamov's sworn statement, and reflects that Imamov was determined to be inadmissible as an immigrant not in possession of a valid entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* The bottom half of the form, captioned "Order of Removal Under Section 235(b)(1) of the Act," is blank, as is the Certificate of Service. *Id.* It thus appears that Imamov has never been subject to an expedited removal order.

[3] Imamov was transferred to the Adams County Correctional Center in Natchez, Mississippi, pending his credible fear interview. Pet. ¶ 16.

[4] It is not clear when, exactly, the standard removal proceedings commenced as the only document in the record referencing them is a Notice to Appear dated August 14, 2025. *See* Resp'ts' Ex. C, ECF No. 5-3. The Government suggests that Imamov was placed in standard removal proceedings after "USCIS rendered a positive finding of credible fear" and before "ICE exercised its discretion to parole [him] from its custody" on January 27, 2023. Resp'ts' Opp'n 6, ECF No. 5.

Following his release, Imamov complied with all conditions of his release, and he also filed an application for asylum and withholding of removal, which was received by U.S. Citizenship and Immigration Services ("USCIS") on December 22, 2023.  Pet. ¶¶ 20-21.

Although Imamov's parole terminated automatically in January 2024, ICE took no steps to re-detain him at that time.  Nor was Imamov re-detained when DHS later issued a Notice to Appear on August 14, 2025, directing Imamov to appear "[i]n removal proceedings under section 240 of the Immigration and Nationality Act [INA]," 8 U.S.C. § 1229a, on March 17, 2026.[5]  Resp'ts' Ex. C.  Like Imamov's earlier DHS paperwork, the Notice charged that he was subject to removal under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document.  *Id.*  It also added a charge that Imamov was subject to removal under § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  *Id.*

On April 3, 2026, as Imamov was reporting to the Philadelphia ICE Field Office for a scheduled report date, officers from ICE and Removal Operations Philadelphia (ERO-PHI) took Imamov into custody and detained him.  Resp'ts' Ex. B at 2.  During the encounter, Imamov was apparently served with a Form I-200, Warrant for Arrest of Alien, though the Form is not in the record.  *Id.* at 3.  Imamov is currently detained at the Federal Detention Center in Philadelphia.  Pet. ¶ 23.

Imamov filed the instant § 2241 habeas petition on April 5, 2026, along with a motion for a temporary restraining order and preliminary injunction.  He argues his detention without a bond

---

[5] According to the record generated when Imamov was taken into ICE custody on April 3, 2026, this court date was later vacated and rescheduled for December 14, 2026.  Resp'ts' Ex. B.  The record indicates Imamov has since been "given a new court date while detained," though the actual date is not specified.  *Id.*

hearing under 8 U.S.C. § 1225(b) violates the INA, the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act (APA), and 8 C.F.R. § 236.1.  The Government responded to the petition on April 8, 2026, and Imamov filed a reply the same day.

**DISCUSSION**

Under 28 U.S.C. § 2241, a district court may grant habeas relief to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3). Habeas jurisdiction under § 2241 extends to challenges to immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

Imamov argues his mandatory detention under 8 U.S.C. § 1225(b) violates the INA because, having been placed in standard removal proceedings under § 1229a, he is subject to detention only under a different statutory provision—8 U.S.C. § 1226(a)—after an individualized bond hearing, which he has not been provided.  In his habeas petition, Imamov assumed the Government was detaining him pursuant to § 1225(b)(2)(A), but the Government has since disclaimed reliance on that provision.  Rather, the Government maintains Imamov is subject to mandatory detention under § 1225(b)(1) because he was initially processed for expedited removal and was thus required to be detained pending resolution of his asylum application.  Although Imamov was granted parole, the Government contends that because his parole automatically terminated, he is properly returned to his detention status at the time parole was authorized.  As the Government acknowledges, its argument has been rejected by every judge in this district who has considered it.  *See* Resp'ts' Opp'n 1 n.1.  Because this Court agrees with the numerous decisions rejecting the Government's position, the petition will be granted.[6]

---

[6] As noted, Imamov also argues his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act (APA), and 8 C.F.R. § 236.1. The Government disagrees, arguing Imamov's current detention comports with the Constitution

It is undisputed that Imamov was initially processed for expedited removal under 8 U.S.C. § 1225. Section 1225 requires the inspection by immigration officers of noncitizens[7] who are "applicants for admission," a term defined in the statute to include "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1), (a)(3). Section 1225(b)(1) establishes an expedited removal process applicable to a subset of such applicants for admission. To be eligible for expedited removal, a noncitizen must be inadmissible either due to fraud or misrepresentation under 8 U.S.C. § 1182(a)(6)(C) or for lack of a valid entry document under § 1182(a)(7). *Id.* § 1225(b)(1)(A)(i)-(ii). The noncitizen must also either be "arriving in the United States" or "described in clause (iii)," the statute's so-called "designation provision." *Id.* To come within the designation provision, the noncitizen must be one who "has not been admitted or paroled into the United States" and "has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph [i.e., § 1225(b)(1)(A)]."[8] *Id.* § 1225(b)(1)(A)(iii)(II).

---

and the APA. Because the Court finds Imamov's detention without a bond hearing violates the INA, the Court does not address these alternative arguments.

[7] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien."

[8] The statute gives the Attorney General authority to designate which noncitizens encompassed by the designation provision will be subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(iii)(I). This authority has since been transferred to the Secretary of Homeland Security. *Make The Road N.Y. v. Wolf*, 962 F.3d 612, 619 n.1 (D.C. Cir. 2020). When Imamov entered in the United States in December 2022, the Secretary of Homeland Security had elected to apply expedited removal to "a category consisting of noncitizens encountered within 100 air miles of the border and within 14 days of their date of entry." Rescission of the Notice of July 23, 2029, Designating Aliens for Expedited Removal, 87 Fed. Reg. 16022-01 (Mar. 21, 2022). On January 24, 2025, however, the Acting Secretary authorized DHS to apply expedited removal to the full scope of the statutory authority. Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139-01 (Jan. 24, 2025) ("restor[ing] the scope of expedited removal to the fullest extent authorized by Congress").

If an immigration officer determines that a noncitizen meets these requirements, "the officer shall order the alien removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(A)(i). But if the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the immigration officer must "refer the alien for an interview by an asylum officer," who must determine whether the person "has a credible fear of persecution." *Id.* § 1225(b)(1)(A)(i)-(ii), (B)(i), (B)(v). A noncitizen who is determined to have a credible fear of persecution "will receive 'full consideration' of his asylum claim in a standard removal hearing." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020) (quoting 8 C.F.R. § 208.30(f)).[9] Under § 1225(b)(1)(B)(ii), such person "shall be detained for further consideration of the application for asylum." *See also Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (interpreting this phrase to mean "that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum" (alteration in original)).[10]

---

[9] The implementing regulation provides that if a noncitizen is found to have a credible fear of persecution, "USCIS has complete discretion to either issue a Form I-862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act [8 U.S.C. § 1229a], or retain jurisdiction over the application for asylum pursuant to § 208.2(a)(1)(ii) for further consideration at a hearing pursuant to § 208.9." 8 C.F.R. § 208.30(f). In Imamov's case, USCIS elected the former option and thus did not retain jurisdiction over his asylum application.

[10] Section 1225 also includes two other mandatory detention provisions, neither of which is applicable here. The first is part of § 1225(b)(1)(B)(iii), which outlines the review process that applies if the asylum officer who interviews the noncitizen finds he does *not* have a credible fear of persecution. A noncitizen subject to these procedures "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Although the Government cites § 1225(b)(1)(B)(iii)(IV) in its opposition brief, that provision does not apply to Imamov because he passed the credible fear screening.

The second mandatory detention provision applies to "applicants for admission" who are not subject to the expedited removal procedures outlined in § 1225(b)(1) and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. § 1229a]." *Id.* § 1225(b)(2)(A). The

Notwithstanding the mandatory language of § 1225(b)(1)(B)(ii), the Secretary of Homeland Security retains discretion to parole applicants for admission into the United States "temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). To be eligible for parole, a noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). A grant of parole under § 1182(d)(5)(A) "shall not be regarded as an admission of the alien," and parole may be terminated upon written notice "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i). By regulation, "[p]arole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). Upon termination of parole, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(2)(A); *see also* 8 C.F.R. § 212.5(e)(2)(i) (providing the noncitizen "shall be restored to the status that he or she had at the time of parole," and "[a]ny further inspection or hearing shall be conducted under section 235 [8 U.S.C. § 1225] or 240 [8 U.S.C. § 1229a] of the [INA]").

---

Government concedes Imamov is not subject to mandatory detention under this provision. *See* Resp'ts' Opp'n 1 (noting Imamov is detained under § 1225(b)(1), not § 1225(b)(2)(A)). This Court has previously interpreted § 1225(b)(2)(A) to apply "to noncitizens who are just arriving or have recently arrived in this country," whereas detention of noncitizens already present in the United States is governed by 8 U.S.C. § 1226(a), which permits (but does not require) the Attorney General to detain noncitizens pending removal proceedings and to release such noncitizens on bond. *See, e.g.*, *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307, at *4-5 (E.D. Pa. Nov. 19, 2025).

The Government argues Imamov's current detention is authorized by § 1225(b)(1)(B)(ii) because he was properly processed for expedited removal after entering United States and is therefore subject to mandatory detention under § 1225(b)(1)(B)(ii) pending adjudication of his asylum application.  In the Government's view, Imamov's release on parole does not preclude his re-detention under § 1225(b)(1)(B)(ii) because upon termination of his parole, Imamov is "returned to the custody from which he was paroled" and thus remains subject to the same detention authority used to justify his original detention—§ 1225(b)(1)—until his claim for asylum is fully adjudicated.  Resp'ts' Opp'n 10-11.

Imamov maintains that having been found to have a credible fear of persecution and placed in standard removal proceedings under 8 U.S.C. § 1229a, he is no longer in the expedited removal process and is therefore not subject to mandatory detention under § 1225(b)(1)(B)(ii).  Rather, as an individual already in the country pending the outcome of § 1229a removal proceedings, he is subject to detention only under § 1226(a).

As the Government acknowledges, the courts in this district that have considered the issue have held that noncitizens similarly situated to Imamov—i.e., those initially processed for expedited removal who are placed in standard removal proceedings after establishing a credible fear of persecution and paroled under § 1182(d)(5)(A)—are not subject to mandatory detention under § 1225(b)(1)(B)(ii) upon expiration of parole.  *See, e.g.*, *Cabreja Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *4-6 (E.D. Pa. Feb. 13, 2026); *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 196505, at *7 (E.D. Pa. Jan. 26, 2026); *see also Gagiev v. Rose*, No. 26-169, 2026 WL 657739, at *9-12 (E.D. Pa. Mar. 9, 2026); *Zavala Ulloa v. Jamison*, No. 26-813 (E.D. Pa. Feb. 20, 2026), ECF No. 9.  Consistent with these decisions—and the decisions of numerous other courts around the country—this Court concludes Imamov is not subject to mandatory detention under

§ 1225(b)(1)(B)(ii) because he no longer falls within the categories of noncitizens subject to expedited removal.[11]

The Government does not contend Imamov remains subject to the expedited removal provisions of § 1225(b)(1) as an "alien . . . who is arriving in the United States."  And with good reason.  While Imamov's habeas petition alleges he was initially placed in expedited removal proceedings "as an arriving alien without valid entry documents," Pet. ¶ 15, when DHS later issued Imamov a Notice to Appear, it classified him not as an "arriving alien" but as an "alien present in the United States who has not been admitted or paroled."  Resp'ts' Ex. C at 1.  Moreover, as numerous courts in this district and elsewhere have recognized, "the plain meaning of the word 'arriving' is being 'in the process of reaching' a destination."[12]  *Cabreja Bueno*, 2026 WL 413315, at *6 (citations omitted); *accord, e.g.*, *Vasquez-Rosario*, 2026 WL 196505, at *8; *Qasemi v. Francis*, No. 25-10029, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306 (E.D.N.Y. 2025).  Having been paroled into the United States and resided here for more than three years, Imamov was no longer "arriving in the United States" when ICE re-detained him in April 2026.

---

[11] These issues are addressed at length in the decisions cited above and many others, including those cited below.  This Court agrees with these decisions and adopts their analysis and incorporates it here.

[12] In *Zheng v. Gonzales*, the Third Circuit Court of Appeals interpreted the term "arriving alien," as defined in 8 C.F.R. § 1.1(q) (a precursor to 8 C.F.R. § 1.2), to "encompass[] not only aliens who are actually at the border, but also aliens who were paroled after their arrival."  422 F.3d 98, 110 (3d Cir. 2005).  However, the Court of Appeals "has not considered the meaning of 'arriving alien' and any connection it may have to 8 U.S.C. § 1225(b)(1)(A)(i) since the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), under which district courts 'must exercise independent judgment in determining the meaning of statutory provisions,' rather than deferring to agencies' interpretations."  *Vasquez-Rosario*, 2026 WL 196505, at *8.  And, as noted, the Government does not contend Imamov is an "arriving alien" (or an "alien . . . who is arriving")—under *Zheng* or otherwise.

Imamov is also not subject to expedited removal and mandatory detention under the designation provision, § 1225(b)(1)(A)(iii).  As discussed above, that provision authorizes the Secretary of Homeland Security to designate for expedited removal "any or all aliens . . . who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer," that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under [§ 1225(b)(1)(A)]."  8 U.S.C. § 1225(b)(1)(A)(iii).  Thus, "if a noncitizen has *either* been 'admitted or paroled,' or has been continuously in the United States for 'a two-year period prior to a determination of inadmissibility,' the noncitizen is not subject to expedited removal (and the accompanying mandatory detention regime of section 1225(b)(1))." *Qasemi*, 2025 WL 3654098, at *7.  Although Imamov has not been "admitted"[13] into the United States and was not physically present in the country for two years before he was determined to be inadmissible,[14] he was previously paroled into the United States in January 2023.  And while his parole has since terminated, numerous courts have concluded, after thorough statutory analysis, that the phrase "has not been . . . paroled into the United States" in § 1225(b)(1)(A)(iii)(II) refers to those who "have not, at any point, been paroled into the United States," not just to those who are not currently on parole.  *Gagiev*, 2026 WL 657739, at *10; *see also Guevara v. Tsoukaris*, No. 26-967, 2026 WL 969261, at *3-4 (D.N.J. Apr. 9, 2026); *Cabreja Bueno*, 2026 WL 413315, at *5; *Vasquez-Rosario*, 2026 WL 196505, at *7; *Qasemi*, 2025 WL 3654098, at *8-9; *Rodriguez-Acurio*,

---

[13] *See* 8 U.S.C. § 1101(13)(A) (defining "admitted" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer").

[14] While Imamov has been physically present in the United States for well over two years, he does not satisfy the two-year requirement because he was determined to be inadmissible under § 1182(7)(A)(i)(I) just days after he entered the country.  *See* Resp'ts' Ex. A.

811 F. Supp. 3d at 299-300.  This Court agrees that the plain language of the statute, read in light of the adjacent statutory terms and the context of the entire statutory scheme, is best interpreted to "prohibit[] 'the expedited removal of noncitizens who have been, at any point in time, paroled into the United States.'"  *Rodriguez-Acurio*, 811 F. Supp. 3d at 299 (quoting *Coalition for Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 83 (D.D.C. 2025)).  Thus, because Imamov has been paroled into the United States, he is no longer subject mandatory detention under § 1225(b)(1)(B)(ii).[15]

> In arguing otherwise, the Government relies on the language in the parole statute providing
>
> when the purposes of such parole shall, in the opinion of the secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt

---

[15] The Government argues Imamov remains subject to mandatory detention notwithstanding his parole because the Secretary of Homeland Security's designation of those categories of noncitizens to whom expedited removal procedures apply extends to "[a]liens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (7)] who are present in the U.S. without having been admitted or paroled *following inspection by an immigration officer at a designated port-of-entry*." Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877-01 (Aug. 11, 2004) (emphasis added); *see also* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139-01 (Jan. 24, 2025) (providing the 2004 designation "shall remain in full force and effect" as expanded by the 2025 designation).  The Government maintains that because Imamov's parole did not occur following inspection by an immigration officer at a designated port of entry, he remains subject to the designation provision.  Resp'ts' Opp'n 11.

This argument is unpersuasive.  While the Secretary of Homeland Security has the "sole and unreviewable discretion" to designate additional categories of noncitizens for expedited removal, this designation authority is limited to those "aliens describe in subclause (II)"—i.e., those noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  8 U.S.C. § 1225(b)(1)(A)(iii)(I)-(II).  Because the statute excludes from the group of noncitizens potentially eligible for expedited removal those who have been "admitted or paroled into the United States"—whether at a designated port of entry or elsewhere—such persons must also be excluded from the Secretary's designation.  Notably, courts have found § 1225(b)(1)(B)(ii) inapplicable to noncitizens who have been paroled into the United States, even where, as here, the noncitizen was encountered by Border Parol agents near a port of entry.  *See, e.g.*, *Cabreja Bueno*, 2026 WL 413315, at *1; *Vasquez-Rosario*, 2026 WL 196505, at *1; *Rodriguez-Acurio*, 811 F. Supp. 3d at 284.

with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). The Government argues that pursuant to this provision, upon termination of his parole, Imamov shall be returned to the same "detention authority" to which he was previously subject—i.e., § 1225(b)(1)—until his asylum claim is fully adjudicated. Resp'ts' Opp'n 11. While some courts have accepted this argument,[16] the courts in this district that have considered it have rejected it.[17]

As an initial matter, "nothing in th[e] text [of Section 1182(d)(5)(A)] affirmatively authorizes detention' of an alien." *Olimov v. Jamison*, No. 26-532, 2026 WL 596155, at *5 (E.D. Pa. Mar. 3, 2026) (alterations in original) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). The statute uses the term "custody," not "detention," providing that following expiration of parole, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1225(d)(5)(A). Although courts are divided on the issue, numerous courts have concluded that the requirement that the noncitizen be returned to "the custody from which he was paroled" does not mean a return to physical custody. *Olimov*, 2026 WL 596155, at *6 (concluding § 1182(d)(5)(A) uses the term custody "or refer to control over the alien, as opposed to physical detention"); *Qasemi*, 2025 WL 3654098, at *10 ("A noncitizen in asylum proceedings who is returned to the custody from which he was paroled loses the freedoms associated with parole status

---

[16] *See, e.g.*, *Geincharles v. Rokosky*, No. 26-150, 2026 WL 266093, at *3 (D.N.J. Feb. 2, 2026); *Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026).

[17] *See, e.g.*, *Gagiev*, 2026 WL 657739, at *10; *Cabreja Bueno*, 2026 WL 413315, at *5; *Vasquez-Rosario*, 2026 WL at *8; *see also Zavala Ulloa*, No. 26-813, ECF No. 9 at 4-5 (holding § 1182(d)(5)(A)'s requirement that, upon termination of parole, a noncitizen be "returned to the custody from which he was paroled" did not require a return to mandatory detention under § 1125(b)(1) where the noncitizen's "status when he was paroled was that of an applicant for admission in regular removal proceedings").

12

and is once again subject to the same constraints on liberty that apply to any noncitizen in removal proceedings without parole."). Understood in this way, termination of parole does not require a return to mandatory detention under § 1225(b)(1)(B)(ii). Rather, the noncitizen is returned to the custody of DHS and his case "shall continue to be dealt with in the same manner as that of any other applicant for admission." *Qasemi*, 2025 WL 3654098, at *11 (quoting 8 U.S.C. § 1182(d)(5)(A)). As an applicant for admission who has been present in the United States since January 2023, Imamov is subject to detention only under § 1226(a), with the opportunity for a bond hearing.

The conclusion that Imamov may be detained only under § 1226(a) is reinforced by the fact that he has remained present in the United States for more two years after his parole terminated automatically in January 2024. Parole is a mechanism whereby a noncitizen "is temporarily permitted to remain in the United States pending a decision regarding his application for admission." *Bamba v. Riley*, 366 F.3d 195, 196 n.2 (3d Cir. 2004). As noted, parole is not an admission of the noncitizen, who is "'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139; *see also* 8 U.S.C. § 1182(d)(5)(A). Once parole terminates, however, a noncitizen living in the United States "is deemed to be unlawfully present in the United States." *Cabrera Martinez v. Marich*, __ F. Supp. 3d __, 2025 WL 3771228, at *7 (W.D.N.Y. Dec. 31, 2025) (explaining that "the 'entry fiction'—which deems someone on parole not to be legally 'present' in the country—must end when someone overstays 'the period of [parole] authorized by the Attorney General'" (citation omitted)); 8 U.S.C. § 1182(a)(9)(B)(ii) (providing "an alien is deemed to be unlawfully present in the United States if the alien is present in the United Stats after the expiration of the period of stay authorized by the Attorney General"). Detention of "aliens already present in the United States" is governed by § 1226. *Jennings*, 583

U.S. at 303.  Thus, as Imamov is "someone who is 'unlawfully present' because his parole has expired and he has been living in the country without parole for a period of time," his "detention must 'be dealt with in the same manner as' any other noncitizen 'already present in the United States,'—that is, under section 1226." *Cabrera Martinez*, 2025 WL 3771228 at *7 (citation and footnote omitted).

Imamov also argues that even if he is subject to mandatory detention under § 1225(b)(1) following expiration of his parole, his detention without a bond hearing violates his right to due process under the Fifth Amendment.  Because the Court concludes Imamov's detention without a bond hearing violates the INA, it does not address this argument except to note that mandatory detention of long-present noncitizens under § 1225(b)(1) raises serious due process concerns, which strengthens its interpretation of the detention and parole provisions.  "Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings*, 583 U.S. at 286.  To the extent the detention and parole provisions are susceptible to other reasonable interpretations, the due process issues support the Court's interpretation.

The Supreme Court has long recognized that the Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690, 693.  In opposing Imamov's due process claim, the Government primarily argues that, as in *Thuraissigiam*, Imamov is "an alien at the threshold of initial entry" who "has only those rights regarding admission that

14

Congress has provided by statute" and "cannot claim any greater rights under the Due Process Clause." Resp'ts' Opp'n 15 (quoting *Thuraissigiam*, 591 U.S. at 107, 139-40). As discussed above, it is questionable whether the entry fiction continues to apply to someone like Imamov, who has been present in the country for years following termination of parole. *See Cabrera Martinez*, 2025 WL 3771228, at \*7. But even if it does, *Thuraissigiam* does not preclude Imamov's due process claim because he is not challenging the admission process but only his detention while that process is ongoing. There is a "growing consensus of district courts across the country recognizing that as-applied due process challenges to detention without a bond hearing are not foreclosed by either *Thuraissigiam* or *Jennings*."[18] *Destino v. FCI Berlin, Warden*, No. 25-374, 2025 WL 4010424, at \*4 n.6 (D.N.H. Dec. 24, 2025) (collecting cases). And courts around the country, including in this district, have concluded that subjecting a noncitizen similarly situated to Imamov to mandatory detention without a bond hearing violates due process. *See, e.g.*, *Cabreja Bueno*, 2026 WL 413315, at \*7-8; *Destino*, 2025 WL 4010424, at \*10-14; *cf. Barbosa Da Cunha v. Freden*, __ F.4th__, 2026 WL 1146044, at \*23 (2d Cir. Apr. 28, 2026) ("It is not hyperbolic to project that the government's interpretation would result in Petitioner, and many similarly situated noncitizens, being detained longer than permissible under *Zadvydas* and its progeny. . . . [T]he serious constitutional concerns raised by the government's interpretation would alternatively warrant its rejection.").

---

[18] Indeed, the Supreme Court in *Jennings* explicitly left open the possibility of a successful due process challenge against § 1225(b) detention. *Jennings*, 583 U.S. at 312 (declining to reach respondents' constitutional arguments regarding mandatory detention and instead "remand[ing] the case to the Court of Appeals to consider them in the first instance").

15

**CONCLUSION**

Because Imamov's detention without a bond hearing pursuant 8 U.S.C. § 1225(b)(1)(B)(ii) is unlawful, he is entitled to habeas relief.  The Court will therefore grant Imamov's habeas petition and order his immediate release from detention as set forth in the accompanying order.  Imamov's emergency motion for temporary restraining order and preliminary injunction will be dismissed as moot.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

16